### SQUIRES & SHERRY *v*. HEMAN BARBER.

#### *Agency.    Set-off.*

C. was the plaintiff's agent for selling the goods in question, a chest of tea and barrel of molasses, and goods of this character, and, at the time of the sale to the defendant, was insolvent and was endeavoring to effect a compromise with his creditors; he owed the defendant twenty dollars and agreed to pay that debt out of the price of the goods sold him, in consideration that the defendant would assist him in compromising another of his debts; he at the same time told the defendant he was not carrying on business in his own name. *Held*, that these facts were sufficient to put the defendant on inquiry as to C.'s true relation to the goods and of his lack of authority thus to dispose of them, and being so affected with notice he cannot set off his claim against C. in an action for the goods by C.'s principal.

ASSUMPSIT for goods sold and delivered. The case was referred to a referee who reported that Peter McDonal, Norman B. Squires and John Sherry were partners in business under the firm name of McDonal, Squires & Sherry, at the time of the purchase of the bill of goods in question; that since that time and before the bringing of this suit, Peter McDonal had deceased, and Norman B. Squires and John Sherry are the surviving partners of said firm; that the defendant sometime in the month of February, 1859, purchased the following goods of one P. W. Converse, viz: one chest of tea and one barrel of molasses; that Converse was at the time of the purchase of the above goods, the authorized agent of the said firm for selling such goods; that he was at this time insolvent, and was attempting to effect a compromise with some of his creditors; and was owing the defendant at this time the sum of twenty dollars; and also was owing the estate of Gains Briggs of which estate the

Squires & Sherry *v.* Barber.

wife of the defendant was an heir ; that at the time and immediately preceding the purchase of the goods, Converse agreed to pay the defendant his said claim of twenty dollars, if he (the defendant) would assist him in compromising the Gains Briggs claim, which the defendant did aid him to do ; that the understanding between the defendant and Converse about the payment for the above goods was, that the said twenty dollars which Converse was owing the defendant should be applied in payment for them, and if there was any balance either way it could be settled between Converse and the defendant at some subsequent time ; that Converse was not authorized by said firm, the plaintiffs, to sell their goods in payment for his, Converse's, debts, but was authorized to sell them for cash or approved credit ; that the defendant has always been ready to pay Converse the balance due on said bill of goods, after deducting therefrom the said sum of twenty dollars ; that about two or two and one-half months after the purchase of said goods, the defendant received at the post office in Fairhaven, the bill of them ; that the said bill was probably sent soon after the goods were shipped, but failed to reach the defendant sooner on account of being directed to him at Fairhaven instead of Benson where he was accustomed to receive his mail matter ; that the defendant never knew until he was called upon for payment of this bill of goods in the spring of 1860 by one Pitts, that the plaintiffs claimed any pay from him, Converse never having at any time disclosed to the defendant that he was the agent of said firm, and was selling goods for them ; that at the time of the purchase of said goods, Converse told the defendant that he was not doing business in his own name, and consequently the defendant was not surprised when he received the annexed bill, made out in the name of said firm.

The said claim of twenty dollars due the defendant from Converse was a balance due on a book account between them.

On the hearing on said report at the September Term, 1864, KEL-logg, J., presiding, the court decided that the defendant was entitled to recover his costs, and rendered judgment accordingly. To this decision and judgment the plaintiffs excepted.

*Prout & Dunton* and *R. S. Peabody*, for the plaintiff.

The referee having found that the goods belonged to the firm of

which the plaintiffs are surviving partners, and that Converse was acting as the agent of said firm, the plaintiffs are entitled to recover, although Converse did not disclose his agency, and the defendant supposed he was dealing with him as principal. *Edwards* v. *Golding et al.*, 20 Vt. 38 ; *Huntington* v. *Knox*, 7 Cush. 371 ; *Taintor* v. *Pendergast*, 3 Hill, 72 ; Story on Agency, pp. 479 and 485 ; *Isley* v. *Merriam*, 7 Cush. 243.

The only question in the case is as to how much the plaintiff's are entitled to recover ; whether they are entitled to recover their whole bill, or whether the $20. debt due from Converse to the defendant should be allowed in offset.

· The facts found by the referee were sufficient to put the defendant upon inquiry as to the ownership of the goods.

The bill sent the defendant was notice to him as to the ownership of the goods, and as nothing was credited upon it, it was also notice to the defendant that the plaintiffs did not agree to the offset, and the defendant should have returned the goods or else pay for them in full. *Pratt* v. *Wiley*, 12 E. C. L. 164.

*H. G. Wood*, for the defendant, maintained, 1st, that the defendant would be entitled to offset his claim against Converse (twenty dollars) against the claim of the plaintiffs. 7 T. R. 360, n. 3.

2d, The plaintiffs cannot recover of the defendant the balance of their bill ($9.09) because the defendant purchased the goods of Converse as *principal*, and never authorized Converse to purchase goods for him of the plaintiffs or any one else. The bill, in view of what Converse told the defendant, did not operate as notice to the defendant that the plaintiffs owned the goods or relied upon him for payment, and the defendant had a *right* to suppose that all the demands for payment were for Converse's benefit.

POLAND, Ch. J.   If an agent for the sale of goods, sell them in his own name, without disclosing his principal, an action may be maintained for the price in the name of the principal. Story on Agency, 479 ; *Edwards* v. *Golding et al.*, 20 Vt. 38.

And this doctrine seems to be generally recognized by all the authorities. This makes the right of the plaintiffs to recover clear for the amount of their bill, above the defendant's debt against Converse the agent.

Squires & Sherry *v.* Barber.

Converse had no authority to sell the plaintiffs' goods in payment of his own debts, and his attempt to do so was unauthorized and unlawful as against the plaintiffs.

If however an agent authorized to sell goods for his principal, sell them in his own name, without disclosing his principal, and the purchaser has no knowledge of the principal, and there are no circumstances sufficient to excite suspicion, or put him on inquiry, as to the right of the agent to deal with the goods as his own, in such case, the purchaser when sued by the principal may set off any claim he has against the agent, as well as if the suit were brought in the name of the agent. Story on Agency, 487, § 404, and authorities cited in note 3.

The report does not show that the defendant, when he made the purchase of the goods, had knowledge that Converse was only an agent and did not own the goods.

Had he knowledge of such facts as ought to have led him to suspect his want of authority to thus deal with the goods as his own, or to use the language of the cases, to have put him on inquiry? We think from the facts reported that he had.

Converse was insolvent, and at the very time of the sale was endeavoring to effect a compromise with his creditors; he owed the defendant twenty dollars, and he agreed to pay that debt out of the price of these goods, in consideration that the defendant would assist him in compromising another of his debts.

He told the defendant at the same time that he was not carrying on business in his own name. This language in connection with the character of the goods sold, (a chest of tea, and a barrel of molasses,) clearly implied the existence of a mercantile establishment, for the sale of heavy groceries, carried on in the name of somebody other than Converse.

This taken in connection with the defendant's knowledge of the insolvency of Converse, and his efforts to compromise his debts, were enough to cause any careful and reasonable man to doubt whether Converse was himself the real owner of the establishment and the goods, with the right to dispose of them in payment of his debts.

We think therefore the defendant must be held affected with notice

of Converse's true relation to the goods, and of his lack of authority thus to dispose of them.

The cases where it has been held that the purchaser from an agent without full knowledge that he was such, but still under such circumstances of suspicion as to affect him with notice, or put him on inquiry, are so varied in their circumstances, that one can hardly be quoted as authority for another. The case of *Pratt* v. *Willey*, 2 C. & P. 350, 12 E. C. L. 164, will perhaps illustrate the principle as well as any.

Surtus was the plaintiff's agent for selling coal. He contracted with the defendant, a tailor, for some clothes, to be paid for in coal, and the clothes were made and delivered to Surtus. When the coal was delivered a ticket was sent with it, in which the plaintiff's name appeared as the seller. It was held that this was enough to put the defendant on inquiry as to the situation and authority of Surtus, and the plaintiff was allowed to recover for the price of the coal.

This result seems no particular hardship on the defendant, as he still has all the rights against Converse for his debt that he had before he purchased the goods. He merely loses the right of keeping the plaintiff's goods in payment of Converse's debt.

Judgment reversed and judgment for the plaintiffs for full amount of their bill.