## L. & L. D. AYER *v.* ROYAL AYER.

### *Partnership. Power of Attorney.*

A sale by one member of a partnership consisting of two partners, of his half of the partnership property, except the accounts, and suddenly leaving the state, operates as a dissolution of the partnership.

Each partner has equal legal right to collect the debts due the partnership, but in making such collections he acts for the partnership, and not in his sole, exclusive right, and is accountable, as partner, for whatever he collects.

An attorney employed by one of the partners to make such collections, is the attorney of the firm, and accountable as well to one partner as the other, and equally subject to the direction and control of one as the other of the partners.

The plaintiffs, A and B, were partners. A suddenly disposed of all his property, and sold his interest in the firm, except the accounts, to G, and absconded from the state, leaving the partnership book of accounts, embracing the account in suit, in the hands of G, with directions to collect them. B immediately notified the defendant to pay to no one but himself, and demanded the company books of G, who refused to surrender them or give him a copy of the accounts. B then brought this suit, after which the defendant paid the debt to G, and took from him a release of it. G subsequently informed A what he had done and A approved. *Held,* that G's discharge of the debt constitutes no defense to this suit.

ASSUMPSIT to collect an account of sixty-three dollars. Plea, the general issue, and notice of settlement and release. Trial by the court, at the December term, 1867, STEELE, J., presiding.

The original indebtedness was conceded. It was also conceded that since the suit was brought the defendant had paid the debt to W. W. Grout, Esq., an attorney, who professed to have authority to receive it and to discontinue the suit, and had executed a release and discharge to the defendant of said debt and this suit thereon.

The only question in the case was whether this payment and release operated as a discharge to the defendant.

With relation to this subject the court found the following facts: The plaintiffs are Loren and Lucius D. Ayer, partners as L. & L. D. Ayer. The defendant was the cousin of Loren and the brother of Lucius.

Loren and Lucius were both men of respectable property, and besides other property which they owned individually, they owned together a small saw-mill, and had run it a few months, but not enough to amount to a very large business. Loren lived some miles from the mill, which was carried on entirely by Lucius

D. In October, 1866, Lucius D. Ayer found it unsafe for him to remain longer under the jurisdiction of the laws of Vermont, and accordingly ran away to some Western state, *via* Canada. There was no evidence that his troubles were of a financial character, but he disposed of all his property, or nearly all, and left secretly in great haste. Before going, he sold his half of the mill and lumber on hand to W. W. Grout, but did not sell his half of the accounts. At the same time he left a little book, which was all the company book there was, with Grout, and instructed him to collect the accounts. The largest account was the one now in suit. As soon as said Loren Ayer found that Lucius had run away, he concluded that he himself would be a loser unless he could collect the company's demands. Accordingly, he notified the defendant to pay no one but him, and demanded the company books of Grout. Grout refused to surrender them or to give Loren a copy of them, believing that his client would be prejudiced by such action. Loren then commenced this suit. The defendant proposed to pay one half to Grout, for Lucius, and one half to Loren. This proposition met no favor from any one. Then he paid Grout the entire debt, and took his release; Grout informed Lucius D. what he had done, and Lucius D. approved; he did not send Lucius D. the funds, but still retains them.

Some of the evidence tended to show an intention on the part of Lucius D. to defraud his partner, but on the whole the court was not satisfied that there was any such intention, and was clearly satisfied that the defendant was moved by no fraudulent design. It did not appear clearly whether in point of fact the partnership stood in such a way as to require Loren to collect these debts to be secure. Each partner was anxious to get the money into his own hands, and the defendant was anxious to get rid of the suit, and preferred to accommodate his brother. The only authority Grout had at the time was a general direction from Lucius D. Ayer to collect those accounts which were left in his hands, and to see generally to the interests of Lucius D. Grout had at the time a power of attorney from Lucius D. which he supposed, and stated at the time, was broad enough to cover this case, but he afterward learned it was not. When Royal paid

this money to Grout he understood that he had the books, and authority from Lucius to collect the debt, but he also understood that Lucius had absconded and sold his property, and that Loren claimed the entire pay. The case has since been kept on foot by Loren. The plaintiffs claimed that the partnership was dissolved by Lucius's absconding and selling his half of the mill and lumber; that under the circumstances, Loren alone had authority to collect the debts, and that Grout's authority did not warrant him in discharging a suit, and that upon the facts of the case as found, the plaintiff ought to recover. But the court ruled otherwise, and rendered judgment for the defendant to recover his costs.

The power of attorney to Grout was a general power to collect all debts due said L. D. Ayer from any and all persons in the state of Vermont.

*W. A. Pierce*, for the plaintiff, maintained that Lucius D's sale of his interest in the partnership property, and absconding from the state, dissolved the partnership. Story on Part., 481; 1 Par. on Con., 172. That Grout was the agent of the partnership, and either partner had the right to determine and revoke the authority given to Grout, at his pleasure; and that Loren Ayer did in fact revoke the agency and authority of Grout when he demanded of him the company books. Story on Agency, 610. That the defendant had notice that the firm had no agent, and his discharge from Grout constitutes no defense.

*William W. Grout*, for the defendant.

The exceptions show that the defendant, in settling the suit and paying the money to the agent of L. D. Ayer, acted in good faith, and "was moved by no fraudulent design." They also show that L. D. Ayer, had no fraudulent intention toward his partner.

The act stands then as having been done in the ordinary course of business and with the utmost good faith; and the defendant insists that he had a legal right to settle as he did, and take a release from the debt and suit; and that such release should

operate as a bar to any further prosecution of the same. The case does not even show that the partner, Loren Ayer, has suffered or will suffer any pecuniary loss in not having himself received the money; and if it *should*, that would be no objection to the validity of the release. Selwyn's *Nisi Prius*, 1104; Gow on Part., 87; Collyer on Part., § 63, § 441, § 637; *Eastman* v. *Wright*, 6 Pick., 316; *Loring* v. *Brackett*, 3 Pick., 403.

The absconding of the partner, L. D. Ayer, did not operate a dissolution of the partnership. *Arnold* v. *Brown*, 24 Pick., 89; *Whitman* v. *Leonard*, 3 Pick., 177. But though the partnership be dissolved, the partners still have the same power to collect and discharge partnership debts that they ever had. Story on Part., § 328; Collyer on Part., § 546, and notes.

If the agent who executed the release had not authority so to do from the partner, L. D. Ayer, by virtue of his possession of the partnership books and the instruction to collect the accounts, nor by virtue of the written power of attorney, certainly the ratification of the act of settling by Lucius D. Ayer, he being informed by the agent of what he had done, amounts to such authority and is sufficient. *Omnis ratihabitio retrotrahitur et mandato priori æquiparatur.* Story on Agency, § 445.

The opinion of the court was delivered by

BARRETT, J. The plaintiffs were partners. L. D. Ayer suddenly disposed of all his property and of his interest in the firm except the accounts, and absconded from the state, leaving the partnership book of accounts, embracing the account in suit, in the hands of Mr. Grout, with directions to collect them. Loren immediately notified the defendant to pay to no one but himself, and demanded the company books of Grout, who refused to surrender them or give him a copy of the accounts. Loren then brought this suit, after which the defendant paid the debt to Grout and took from him a release of it. Grout afterward informed L. D. what he had done, and L. D. approved. Grout still retains the money paid him by the defendant.

The partnership was dissolved by the course taken by said L. D. Ayer, in selling out his interest in it and going off. Each part-

ner had equal legal right to collect the debts due, but in making such collections he would be acting for the partnership and not in his sole, exclusive right, and would be accountable as partner for whatever he should collect. An attorney employed by one of the partners to make such collections, would be the attorney of the firm, and accountable as well to one partner as the other, and equally subject to the direction and control of one as the other of the partners. It was as much the province of Loren to withdraw the books and countermand the order of L. D. to Grout, as it was of L. D. to deliver the books to Grout with direction to make collections. In this matter Grout was not made the special attorney of said L. D. Ayer, to stand in his place and act in his stead, as fully personating L. D. Ayer himself. The written power of attorney does not extend to partnership affairs. Grout's employment as to the partnership demands consisted only in the delivery of the books to him by L. D. with directions to make collections. This made him, for that purpose, the attorney of the partnership, and not solely of L. D. Ayer, in respect to those demands. It was competent, therefore, for Loren Ayer to say to Grout that he himself would make any or all of the collections without his aid or interposition; and to that extent Grout would cease to have right or authority as attorney for the collection of such of the partnership demands. It was competent for him to order a debtor of the firm, as he did the defendant in this case, not to pay to any body but himself, and such order would be effectual as against every body but the other partner or a person standing fully in his individual right as partner.

The legal effect of the act of Grout, in taking pay of the defendant and giving him a discharge, depends entirely on the authority with which he was clothed as against Loren at the time the act was done. At that time he had been disrobed of his authority to make collections of the partnership demands by the order and requirement of Loren in demanding of him to deliver up the books of the partnership. The subsequent approval by L. D. Ayer of what Grout had done could give no efficacy to it as against Loren as one of the partners. It could operate only as between said L. D. Ayer, Grout and the defendant, preclud-

ing L. D. Ayer from denying or repudiating the propriety of the payment by the defendant to Grout, and the validity of the discharge given by Grout.

The defendant can not claim immunity against the legal effect of the course taken by Loren for his own behoof as a member of the firm, for the defendant was fully notified, and, in paying to Grout, he acted upon his own judgment, in view of all the facts, and of the legal rights and liabilities involved. He has ample resource for his own indemnity against loss, in his discharge from Grout, and Grout is safe by reason of having the money paid to him by the defendant, still in his own pocket.

The discharge as given does not constitute a defense to the suit, Grout not being authorized to receive payment of the debt, or to discharge it. Judgment reversed, and judgment for the plaintiff for the $63 and interest from the commencement of the suit.